IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

RECEIVED
2013 MAY -6  P 1:35

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| Marcos Baca and Jerome Harris, individually and on behalf of others similarly situated. | ) ) ) ) ) Civil Action File No. 2:13-CV-301 |
| Plaintiffs | ) ) |
| vs. | ) ) COMPLAINT ) CLASS ACTION |
| Chowel Weldparts Inc., Dongwon Autopart Technology, Alabama, LLC, Ambassador Personnel of Alabama, Inc. | ) ) ) DEMAND FOR JURY TRIAL ) ) |
| Defendants. | ) |

## COMPLAINT

Plaintiffs Marcos Baca and Jerome Harris (collectively, "Plaintiffs"), individually and on behalf of a class, bring this action against Defendants Chowel Weldparts, Inc. ("Chowel"), Dongwon Autopart Technology, Alabama, LLC ("Dongwon") (collectively Chowel and Dongwon are hereinafter referred to as the "Plant Operator Defendants"), and Ambassador Personnel of Alabama, Inc. ("Ambassador").

### SUMMARY OF CLAIMS

1. This is a class action under the federal Racketeer Influenced and Corrupt Organizations ("RICO) act, 18 U.S.C. § 1961 *et seq.* The members of the class are current and former hourly employees of the Plant Operator Defendants, whose hours and wages have been depressed by Defendants' scheme to systematically employ and harbor large numbers of illegal workers. Plaintiffs seek injunctive and monetary relief on behalf of the Plant Operator

Defendants' legally-employed hourly workers in Alabama who have been harmed by Defendants' scheme.

2. The Plant Operator Defendants with the assistance of Defendant Ambassador, have padded their profits by systematically employing illegal workers in their Alabama plants, at the expense of American workers. The employment of illegal workers is not accidental; the Plant Operator Defendants have, in their Alabama facilities, engaged in the widespread employment of illegal workers, *i.e.*, workers who are not authorized to be employed in the United States. By employing and harboring illegal workers, the Plant Operator Defendants are able to reduce labor costs through reducing the hours of its legal employees, thereby depressing their hourly wages and making American workers more vulnerable to layoffs.

4. Defendants' criminal scheme involves plant operators and the staffing agency that supplies the illegal workers, all of whom conspire to increase their profits by systematically violating federal law.

5. Through this class action, Plaintiffs seek to vindicate their rights and the rights of the putative class of workers who have been exploited and underpaid as a result of Defendants' systematic employment of illegal immigrants, in violation of RICO.

## PARTIES

6. Plaintiff Marcos Baca is a resident of Crenshaw County, Alabama. Mr. Baca is a native of Arizona but now resides in Alabama. Mr. Baca was directly employed by Defendant Chowel. He worked at the Chowel plant located in Crenshaw County, Alabama, where he was paid an hourly salary of approximately $8.00. Mr. Baca sought to work 40 hours a week and would have welcomed the opportunity to work overtime. However, due to Defendants' employment of illegal immigrants, Mr. Baca routinely worked less than 40 hours a week and

rarely worked overtime. On numerous occasions, Mr. Baca was not given hourly work because his duties were performed by illegal workers.

7. Mr. Baca is bilingual. As a result, he often served as an informal translator in the plant and outside the plant. Mr. Baca had numerous conversations with illegal workers who stated that they were paid an hourly wage below that paid to legal workers.

8. Plaintiff Jerome Harris is a resident of Crenshaw County, Alabama. Mr. Harris is a native Alabaman who has lived in Alabama for his entire life. Mr. Harris was directly employed by Defendant Dongwon. He worked at the Dongwon plant located in Crenshaw County, Alabama, where he was paid an hourly salary of $9.73. Mr. Harris sought to work 40 hours a week and would have welcomed the opportunity to work overtime. However, due to Defendants' employment of illegal workers, Mr. Harris routinely worked less than 40 hours a week and rarely worked overtime. On numerous occasions, Mr. Harris was not given hourly work because his duties were performed by illegal workers.

9. Defendant Chowel Weldparts, Inc. ("Chowel") is a domestic corporation with its principal place of business in Montgomery, Alabama. Chowel may be served by service on its registered agent for service of process, Yong Choi, 5826 US Hwy 31 N, Luverne, AL 36049. Chowel manufactures the impact beams for vehicles manufactured by Hyundai America. The president of Chowel instructed a Chowel employee tasked with interviewing job applicants that the employee should actively seek to hire illegal workers. Chowel maintains stacks of fake identification papers in its HR office, so as to provide a veneer of legitimacy to its systematic employment of illegal workers.

10. Defendant Dongwon Autopart Technology, Alabama, LLC ("Dongwon") is a domestic corporation with its principal place of business in Montgomery, Alabama. Dongwon

may be served by service on its registered agent for service of process, Kin Jung-Kwon, 2016 Seaton Park, Montgomery, AL 36116. Dongwon manufactures door frames, impact beams, cowl cross bars and other parts for vehicles manufactured by Hyundai America.

11. Defendant Ambassador is a corporation with offices located throughout Alabama including in Montgomery Alabama, 500 Interstate Park Dr. Suite 519. Ambassador is a staffing agency that operates in Alabama and systematically recruited illegal workers and provided those workers to the Plant Operator Defendants.

## JURISDICTION AND VENUE

12. Defendants are subject to the personal jurisdiction of this Court.

13. This Court has subject matter jurisdiction over this case pursuant to 18 U.S.C. § 1964(c), 28 U.S.C. § 1332 (federal question) and 28 U.S.C. § 1367 (ancillary jurisdiction).

14. Venue is proper in this district, pursuant to 28 U.S.C. § 1391(b), as Defendants reside in this district and events giving rise to Plaintiffs' claims occurred in this district. Venue is also proper in this district pursuant to 18 U.S.C. § 1965, as Defendants reside, are found in and transact their affairs in the Middle District of Alabama.

## FACTS

### Defendants' Hiring and Harboring of Illegal Workers

15. The Plant Operator Defendants employ many thousands of hourly-paid workers in its operations in Alabama.

16. The Plant Operator Defendants, with the assistance of Ambassador, have engaged in the illegal hiring of persons who are not eligible for employment in the United States in order to minimize labor costs.

17. The Plant Operator Defendants have accepted for employment and continues to employ hundreds of workers that they know or have reason to know are not authorized to work in the United States.

18. Defendants have also knowingly and recklessly accepted, as proof of eligibility for employment, documents that reflect successive different names for a single person. Although Defendants are aware that numerous employees have used or are using identities different from those they had previously used while employed with the Plant Operator Defendants, Defendants have accepted and continue to accept new identification and work authorization documents that they know or have reason to know are false or obtained by false statements from these employees.

19. Defendants have requested that some of their production workers fill out documentation certifying that the illegal workers are certified in areas such as safety and equipment when, in fact, such employees are not certified in these areas.

20. All Defendants are complicit and active in this scheme.

21. Defendants' enterprise affects interstate commerce because the hours and, thereby, the wages of the Plant Operator Defendants' legal workers are depressed. Many times, illegal workers end up getting paid more than the American workers because they are able to work more hours than the American workers. In addition, the American workers cannot get raises and are regularly the first employees to be laid off by Defendants.

22. Defendants' employment and harboring of large numbers of illegal workers has enabled the Plant Operator Defendants to depress wages and thereby pay all of its hourly employees, including legally employed workers who are members of the class, wages that are lower than they would be if Defendants did not engage in this illegal conduct.

23. Defendants' widespread employment and harboring of illegal workers has substantially and unlawfully increased the supply of workers from which the Plant Operator Defendants make up their hourly workforce. This unlawful expansion of the labor pool has permitted the Plant Operator Defendants to depress wages that it pays to all its hourly employees, including Plaintiffs and all Class members. If Defendants had complied with the law by limiting its hourly workforce to those workers authorized to work in the United States, the Plant Operator Defendants would have had to assign more hours, and therefore pay more wages to the Plaintiffs and the members of the Class.

24. One purpose and intended effect of Defendants' widespread employment and harboring of illegal workers is to deprive the Plant Operator Defendants' hourly workforce of any individual or collective bargaining power. Because the Plant Operator Defendants know that many of its workers are not authorized to reside or work in the United States, the Plant Operator Defendants know that those illegal workers are beholden to the Plant Operator Defendants. Further, the Plant Operator Defendants are aware that their undocumented workers have no effective means to complain about the terms of their employment.

25. As a direct and proximate result of Defendants' employment and harboring of illegal workers, Plaintiffs and all members of the Class have earned wages below the wages they would have earned if Defendants had complied with the law.

## V. CLASS ACTION ALLEGATIONS

26. Plaintiffs bring this action on behalf of all persons legally authorized for employment in the United States who are or have been employed by the Plant Operator Defendants in hourly wage positions in Alabama at any time from May 3, 2007 October/November__, 2007 to the present (the "Class").

27. The Class is so numerous that joinder of all Class members is impracticable. Plaintiffs believe the Class contains many thousands of members, and the actual number of Class members can be ascertained through discovery.

28. There are numerous questions of law and fact common to the Class. Those questions include, but are not limited to:

    a. How many persons who are not authorized to be employed in the United States have Defendants employed in hourly wage positions during the Class Period?

    b. Have Defendants knowingly or with reckless disregard employed workers who are not authorized for employment in the United States during the Class Period?

    c. Have Defendants knowingly or recklessly harbored undocumented aliens in the United States in violation of federal law during the Class Period?

    d. To what extent have Defendants' employment and harboring of person who are not authorized to be employed in the United States in hourly wage positions depressed the wages Defendants provide to legal hourly employees?

    e. Are Defendants part of an "enterprise" under RICO?

    f. Have Defendants engaged in a pattern of racketeering activity under RICO?

29. The claims of the Plaintiffs are typical of the claims of the Class. Plaintiffs are current and former hourly workers whose hours and wages were depressed by Defendants'

employment and harboring of illegal workers. Plaintiffs have no interests that are antagonistic or adverse to the Class members.

30. Plaintiffs were injured by direct and proximate reason of Defendants illegal conduct.

31. Plaintiffs will fairly and adequately protect the interests of the class.

32. Plaintiffs are adequate representatives of the Class. Plaintiffs are each authorized for employment in the United States and are hourly workers employed by Defendants whose wages have been depressed by Defendants employment and harboring of illegal workers. Plaintiffs have retained counsel that are experienced in class action litigation, RICO litigation and complex litigation. Accordingly, Plaintiffs will fairly and adequately protect and represent the interests of the Class.

33. Plaintiffs seek certification of a class, alternatively, under Fed. R. Civ. P. 23(b)(2) or 23(b)(3), or a combination thereof.

34. Defendants' employment and harboring of illegal workers has the effect of depressing wages and benefits to the detriment of all members of the Class. Accordingly, declaratory and injunctive relief that prevents Defendants from continuing to employ or harbor illegal workers is appropriate on a class wide basis.

35. The questions of law and fact common to all members of the Class predominate over any questions that may affect only individual members of the Class.

36. A class action is a superior method of adjudicating the Class members' claims because individual actions would unnecessarily burden the Court and create the risk of inconsistent results.

37.   Given the significant expense required to prosecute the foregoing claims against Defendants, the costs of individual actions would exceed or consume the amount recovered in any individual action. The expense of pursuing individual actions will require individual members of the Class to forego their individual claims against Defendants if they are not permitted to pursue those claims as a Class.

38.   Plaintiffs are not aware of any litigation concerning this controversy that has already been initiated by or against any members of the Class.

39.   Because both Defendants and the large majority of the Class members reside in this district and many of the events giving rise to this action took place in this district, it is both desirable and efficient to concentrate the litigation of these claims in this particular forum.

40.   This action is manageable because the evidence proving that Defendants have engaged and continue to engage in the alleged conduct is common to the Class. Furthermore, the identities of the Class members are known to Defendants.

## COUNT I
### CIVIL RICO (18 U.S.C. §§ 1961 *et. Seq.*)

41.   Plaintiffs adopt and incorporate by reference the foregoing paragraphs as if fully set forth herein.

42.   Plaintiffs are natural persons and, as such, are persons within the meaning of 18 U.S.C. § 1961(3).

43.   Defendants are corporate entities and, as such, are "persons" within the meaning of 18 U.S.C. § 1961(3).

### The Enterprise

44.   Defendants comprise the following distinct groups of people that together form an enterprise within the meaning of 18 U.S.C. § 1961(4): (1) the Plants Operators Defendants

9

(Chowel and Dongwon), and (2) the staffing agency (Ambassador). Each and every Defendant is associated with the enterprise.

45. Defendants also qualify as separate and distinct enterprises within the meaning of 18 U.S.C. § 1961(4).

46. The purpose of the enterprise or enterprises ("Enterprise"), which is common to all Defendants, is to maximize profits by (a) directly and indirectly employing illegal workers; (b) paying the illegal workers less than the minimum for regular hourly and overtime work; (c) correspondingly reducing the hours of legally employed workers; and (d) reducing the negotiating leverage available to legal employees. Ambassador profits due to direct payments from the Plant Operators Defendants.

47. This scheme is accomplished by, *inter alia* all of Defendants knowingly employing illegal workers and turning a blind-eye to the employment of illegal workers. Further, there is a longstanding relationships between the Defendants.

48. The Enterprise has, for more than four years, been engaged in, and continues to engage in, activities that affect interstate commerce in a variety of ways, including, *inter alia*:

   a. The enterprise affects interstate commerce in that the illegal workers employed by Defendants travel in international and interstate commerce in order to reach Defendants' facilities in Alabama.

   b. The enterprise also affects interstate commerce in that it reduces the income of the legal workers who are part of the Defendants' hourly work force.

   c. The enterprise also affects interstate commerce in that the Plant Operators Defendants are directly engaged in the production, distribution and acquisition of goods and services in interstate commerce.

49. Defendants accepted and retained the benefits of the acts of racketeering activity, thereby ratifying the conduct of its managers, employees, and the members of the enterprise who assisted it in committing those acts of racketeering activity.

50. Defendants' unlawful enterprise in violation of RICO has been and remains longstanding, continuous, and open-ended.

### The Pattern of Racketeering

51. Defendants, individually and collectively, as an Enterprise, have engaged, directly and indirectly, in a pattern that includes many more than two acts of racketeering activity, as described below, in violation of 18 U.S.C. § 1961(5). The most recent act of racketeering activity occurred well within ten years after the commission of a prior act of racketeering activity.

52. Defendants' racketeering activity includes an open and ongoing pattern of violations of Section 274 of the Immigration and Nationality Act, 8 U.S.C. § 1324(a).

53. Specifically, Defendants have violated and continue to violate 8 U.S.C. § 1324(a)(3)(A), which makes it a federal crime to: "knowingly hire[] for employment at least 10 individuals with actual knowledge that the individuals are aliens..." during a 12 month period. Defendants have violated this provision of the Act, including by employing more than 10 aliens per year each year for the last four years, knowing that each such person was (a) smuggled or otherwise brought into the United States in violation of U.S. law; (b) illegally harbored once in the United States; (c) not lawfully admitted to the United States for permanent residence; and/or (d) not authorized for employment in the United States.

54. Defendants have also violated and continue to violate 8 U.S.C. § 1324(a)(1)(A)(iii), which makes it a federal crime to "conceal, [], harbor[] or shield from

detection, or attempt [] to conceal, harbor or shield from detection..." aliens who have entered the U.S. legally. Defendants have violated this provision by (a) knowingly employing illegal aliens within its factories, warehouses and other facilities in Alabama and/or (b) taking steps to shield those illegal aliens from detection, by, among other things, helping them evade detection during law enforcement searches and inspections.

55. Furthermore, Defendants have also violated and continue to violate 8 U.S.C. § 1324(a)(1)(A)(iv), which prohibits any person or entity from "encourage[ing] or induc[ing] an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of law[.]" By knowingly or recklessly employing and harboring undocumented aliens in their Alabama facilities, Defendants have helped hundreds of aliens to avoid detection and enabled them to remain in the United States in violation of U.S. law. And by successively hiring and employing the same undocumented aliens under different names and accepting false identification and work authorization documents that reflect different identities for these aliens, Defendants have knowingly or recklessly encouraged any undocumented aliens that are discovered to return to the United States and to their employment at Defendants' facilities in violation of United States law.

56. Each violation of 8 U.S.C. § 1324 constitutes an act of "racketeering activity" under RICO, 18 U.S.C. § 1961(F).

57. The racketeering activity also includes open and ongoing violations of 18 U.S.C. § 1546(a), including Defendants' acceptance of identification documents and other documents that authorize employment in the United States that Defendants knew or had reason to know were not lawfully issued for the bearer's use, were false and/or were obtained by false statements.

58. Defendants have also violated and continue to violate 18 U.S.C. § 1546(b) by using identification documents that Defendants knew or had reason to know were false and/or not lawfully issued to the bearer to falsely verify the eligibility of the persons presenting them to work at Defendants' institutions, and recording information from those documents on I-9 forms.

59. Each violation of 18 U.S.C. § 1546 constitutes "racketeering activity" under RICO, 18 U.S.C. § 1961(B).

### The Acts of Racketeering Activity Committed by Defendants Are Related

60. The acts of racketeering activity committed by Defendants have the same or similar methods of commission in that they involve the knowing employment of illegal workers, the concealment, harboring and shielding from detection of illegal workers, and the acceptance or use of fraudulent documents in connection with the hiring of illegal workers.

61. The acts of racketeering activity committed by Defendants have the same or similar objective: to maximize profits by the reducing wages paid to Defendants' hourly workforce.

62. The acts of racketeering activity committed by Defendants have the same or similar victims, including the Plaintiffs and the other members of the Class.

63. The acts of racketeering activity committed by Defendants are otherwise related by distinguishing characteristics including, but not limited to, the involvement of Defendants, illegal workers, and other members of the association-in-fact enterprise identified in paragraphs 72 to 78 herein.

### The Acts of Racketeering Activity Committed by Defendants Involve a Distinct Threat of Long-Term Racketeering Activity

64. Defendants' acts of racketeering activity involve a distinct threat of long-term racketeering activity.

65. Defendants' practice of knowingly employing, harboring, concealing and shielding illegal workers and Defendants' acceptance and use of documents that are not lawfully issued for the use of the possessor or are false has continued for years. Defendants' unlawful conduct is ongoing at the present time and will continue into the future unless halted by judicial intervention.

66. Defendants' knowing employment, harboring, concealing and shielding of illegal workers and its acceptance and use of documents that are not lawfully issued for the use of the possessor or are false is part of its regular way of conducting business.

67. Defendants have committed hundreds, and probably thousands, of violations of 8 U.S.C. § 1324 and 18 U.S.C. § 1546 as part of its pattern of racketeering activity.

68. Defendants' knowing employment, harboring, concealing and shielding of illegal workers and their acceptance and use of documents that are not lawfully issued for the use of the possessor or are false is so pervasive that illegal workers now constitute a substantial of the work force in many of Defendants' facilities in Alabama.

### DEFENDANTS HAVE CAUSED PLAINTIFFS' WAGES TO BE DEPRESSED

69. Defendants' violations of RICO have proximately caused the wages of Plaintiffs and all other members of the Class to be depressed below what they would have been in a labor market comprised of legally employed workers.

70. Plaintiffs and the Class have suffered an injury to their "Business or property," *i.e.* lost wages, as a direct result of Defendants' violations of RICO.

71. Defendants' unlawful conduct has allowed Defendants to earn or retain significant funds to which they are not entitled. For example, Defendants' widespread employment of illegal workers has permitted Defendants to depress the wages for their hourly workers and to

reduce the expenses they would incur negotiating against a fully American workforce, where workers could rely on the protection of our laws and be confident that no Defendant could use their immigration status against them. These savings contribute to Defendants' profit margins and provide the financial motive for Defendants' hiring of illegal workers.

72. The foregoing conduct constitutes a violation of 18 U.S.C.§ 1962(c).

73. Plaintiffs have been injured in their property by reason of Defendants' violations of 18 U.S.C. § 1962(c).

74. The injuries suffered by plaintiffs were caused by Defendants' violations of 18 U.S.C. § 1962(c).

75. Pursuant to 18 U.S.C.§ 1964(c), plaintiffs are entitled to recover threefold the damages they have sustained and their costs of suit, including reasonable attorneys' fees.

## COUNT II

### Unjust Enrichment in Violation of Alabama Law

76. Plaintiffs adopt and incorporate by reference the foregoing paragraphs as if fully set forth herein.

77. Defendants' employment and harboring of illegal workers has had the purpose and effect of depressing the wages paid to Defendants' hourly workers who are eligible for employment in the United States. Defendants' conduct therefore is intended to and has the effect of permitting Defendants to reap substantial wage savings.

78. The savings that Defendants have been able to achieve and continue to achieve through their employment and harboring of illegal workers has been unjustly and inequitably conferred on Defendants at the expense of its hourly workers who are authorized for employment in the United States, including Plaintiffs and all other members of the Class. These

cost savings permit Defendants to earn larger profits than it would be able to earn if it did not employ and harbor illegal workers.

79.  Under these circumstances, Defendants have been unjustly enriched at the expense of the Plaintiffs and all the members of the Class. Defendants therefore should be ordered to disgorge its unlawful profits or otherwise return the full amount of any wage savings and worker's compensation savings that are the direct and proximate result of Defendants' unlawful conduct.

## PRAYER FOR RELIEF

Plaintiffs demand judgment and other relief as follows:

A.  Certification of a Class pursuant to Fed. R. Civ. P. 23;

B.  Judgment in an amount equal to three times the actual damages sustained by the Class, pursuant to 18 U.S.C. § 1964(c);

C.  Reasonable attorneys' fees, pursuant to 18 U.S.C. § 1964(c);

D.  Judgment in an amount to be proven at trial that requires Defendants to disgorge any unlawful profits or otherwise return the full amount of its unjust enrichment;

E.  Trial by jury; and

F.  Such other relief as the Court deems just and proper.

This 3rd day of May, 2013

Respectfully submitted,

By: Glen M. Connor, asb-0562-r64g
Quinn, Connor, Weaver, Davies & Rouco LLP
Suite 380E, 2700 Highway 280
Birmingham, AL 35223
Telephone:   (205) 870-9989
Facsimile:   (205) 803-4143
gconnor@qcwdr.com

Peter J. Mougey, asb-2825-u72p
James L. Kauffman (*Pro Hac Vice* forthcoming)
Levin Papantonio Thomas Mitchell
Rafferty & Proctor, P.A.
316 South Baylen Street, Suite 600
Pensacola, Florida 32502-5996
Telephone: (850) 435-7068
Facsimile: (850) 436-6068
pmougey@levinlaw.com
jkauffman@levinlaw.com

Jeremiah Frei-Pearson (*Pro Hac Vice* forthcoming)
Todd S. Garber (*Pro Hac Vice* forthcoming)
Meiselman, Packman, Nealon,
Scialabba & Baker P.C.
1311 Mamaroneck Avenue
White Plains, New York 10605
Telephone:    (914) 517-5000
Facsimile:    (914) 517-5055
jfrei-pearson@mpnsb.com
tgarber@mpnsb.com

Patrick L. Hays, Jr., asb-2301-c45h
The Hays Law Firm, LLC
415 E. Commerce St, Ste 201
Greenville, Alabama 36037
Telephone:    (334) 371-4297
Facsimile:    (334) 371-4296
phays@hays-lawfirm.com

*Attorneys for Plaintiffs and the Class*

17