## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **Marcos Baca and Jerome Harris,** | ) | |
| **individually and on behalf of others** | ) | |
| **similarly situated,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Civil Action No.** |
| **v.** | ) | **2:13-cv-00301-MEF** |
| | ) | |
| **Chowel Weldparts, Inc., Dongwon** | ) | |
| **Autopart Technology, Alabama, LLC,** | ) | |
| **Ambassador Personnel of Alabama,** | ) | |
| **Inc.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### DEFENDANTS CHOWEL WELDPARTS, INC.'s AND DONGWON AUTOPART TECHNOLOGY, ALABAMA LLC'S MOTION TO DISMISS AND MEMORANDUM OF LAW IN SUPPORT

Defendants Chowel Weldparts, Inc. ("Chowel") and Dongwon Autopart Technology, Alabama LLC, ("Dongwon"), pursuant to Federal Rule of Civil Procedure 12(b)(6), file their Motion to Dismiss and Memorandum in support thereof, and state as follows:

### I.   INTRODUCTION

Plaintiffs Baca and Harris commenced this RICO class action on May 6, 2103.  The putative class is identified as all legally authorized hourly workers employed by Defendants Chowel and Dongwon (sometimes referred to as the "Plant Operators") at their separately owned and operated manufacturing plants in

Montgomery, Alabama since May 2007.[1]  In addition to Chowel and Dongwon, the Complaint names Ambassador Personnel of Alabama, Inc. ("Ambassador"), a staffing agency, as a Defendant.  Plaintiffs' theorize that all Defendants engaged in a criminal scheme to use illegal workers, and Plaintiffs lost work opportunities and their wages were depressed as a result.  Specifically, Plaintiffs assert a claim for unjust enrichment and a claim under the federal Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961(c) (RICO), alleging predicate acts under 8 U.S.C. § 1324(a)(3)(A), 8 U.S.C. § 1324(a)(1)(A)(iii), 8 U.S.C. § 1324(a)(1)(A)(iv), (generally, bringing in and harboring illegal workers) and 18 U.S.C. § 1546(a) and (b) (generally, fraud and misuse of visas and other documents).

Plaintiffs' legal theory is neither unique nor meritorious.  In recent years a number of high profile, *albeit unsuccessful*, civil RICO actions have been brought against employers for purported immigration violations.[2]  While the courts, the

---

[1] Plaintiffs' Complaint identifies the putative class as those employed from "May 3, 2007 October/November __, 2007 [sic] to the present."

[2] *See, e.g., Walters v. McMahen,* 684 F.3d 435, 437, 445-46 (4th Cir. 2012)(affirming district court's granting of motion to dismiss Plaintiffs' RICO claim for violation of immigration laws because employees failed to sufficiently allege a violation of RICO predicate acts or that the predicate act violations proximately caused Plaintiffs injuries);  *Simpson v. Sanderson Farms, Inc.*, No. 7:12-CV-28(HL), 2013 U.S. Dist. LEXIS 15064, at *10-16 (M.D. Ga. Feb. 5, 2013); *Zavala v. Wal-Mart Stores Inc.*, 691 F.3d 527, 541-43 (3d Cir. 2012); *Cruz v. Cinram Int'l, Inc.,* 574 F. Supp. 2d 1227, 1232-33 (N.D. Ala. 2008); *Broussard-Wadkins v. Maples*, 895 F. Supp. 2d 1159, 1196-1206 (N.D. Ala. 2012); *Hall v. Thomas,* 753 F. Supp. 2d 1113, 1154-63 (N.D. Ala. 2010); *Tsewang Gyamtso v. New Metro Trucking Corp.*, No. 11-3457(DWF/JSM), 2013 U.S. Dist. LEXIS 70775, at *9-16 (D. Minn. May 20, 2013).

parties and the pleadings in these cases at issue vary, the plaintiffs share a common fate -- they have failed, most after a Rule 12(b)(6) dismissal, and others following years of expensive litigation.

RICO extends criminal penalties (and a civil cause of action) for acts performed as part of an ongoing *criminal organization*.  The statute was enacted to address the problems of *organized crime* - "mobsters and organized criminals" - but, as the Supreme Court recognized, it has "evolv[ed] into something quite different" and now is used against "respected and legitimate 'enterprises.'"[3]  The above discussed recent flurry of civil RICO actions brought against employers for purported immigration violations is the latest example of this trend.

And the trend is dangerous. A civil RICO suit, even a frivolous one, can have a devastating effect on a defendant - it has been called "the litigation equivalent of a thermonuclear device."[4]   Given a civil RICO suit's draconian consequences, a 12(b)(6) motion to dismiss such an action is analyzed with

---

[3] *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 471 (U.S. 2006); *Sedima v. Imrex Co.*, 473 U.S. 479, 499-500 (U.S. 1985).

[4] *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996), *aff'd, sub nom. Katzman v. Victoria's Secret Catalogue, Div. of The Ltd., Inc,* 113 F.3d 1229 (2d Cir. 1997); *Cruz*, 574 F. Supp. at 1230(internal citation omitted)("the mere invocation of the [RICO] statute has such an in terrorem effect that it would be unconscionable to allow it to linger… unless there is some articulable factual basis which, if true, would warrant recovery under the statute.").

"particular scrutiny."[5]   The stringent scrutiny at the pleading stage is even more pronounced since the Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), where the Supreme Court held a claimant can no longer rest on legal conclusions, bald assertions devoid of any factual enhancement *or* formulaic recitations of the elements of the claim to survive a motion to dismiss.

And Plaintiffs' suit is just that.  As will be discussed below, Plaintiffs' claims are completely devoid of any factual, non-conclusory support.  Indeed, Plaintiffs fail to sufficiently allege *any* elements of their claims, let alone *all* of them, and dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is required.

## II.    PLAINTIFFS' ALLEGATIONS

### A.    The Parties

Plaintiff Marcos Baca is a former hourly employee at Chowel's manufacturing plant in Montgomery, Alabama who made approximately $8.00 an hour. (Compl., ¶ 6). Plaintiff Jerome Harris is a former hourly employee at Dongwon's manufacturing plant in Montgomery, Alabama who made approximately $9.73 an hour. (¶ 8).  The Complaint asserts both Baca and Harris

---

[5] *Purchase Real Estate Group, Inc. v. Jones*, No. Civ. 05-10859, 2010 U.S. Dist. LEXIS 43201, at *17-18 (S.D.N.Y. Apr. 30, 2010).

4

"routinely" worked less than 40 hours a week, and rarely worked overtime, "because" their job duties were performed by illegal workers. (¶¶ 6, 8).  No other facts are provided about the Plaintiffs, such as their work dates, their departments, their titles, the circumstances surrounding the end of their employment, their hours, any facts about the illegal workers who allegedly performed Plaintiffs' job duties, such as their names, work dates, departments, or job titles, or any facts about other workers who were employed at the same and in the same department as plaintiffs.

Defendant Chowel and Dongwon supply parts for vehicles manufactured by Hyundai.[6]  Chowel manufactures impact beams (¶ 9) and Dongwon manufactures doorframes, cowl cross bars, and other parts (¶ 10).  Defendant Ambassador is a staffing agency that provides workers to the Plant Operators.[7] (¶ 11).

B.    The "Facts"

Plaintiffs so-called "Facts" section contains ten conclusory paragraphs. (¶¶ 15-25).  In the "Facts" section, Plaintiffs allege that the Plant Operator Defendants employ thousands of hourly-paid workers (¶ 15), and, with the assistance of Ambassador, they knowingly hired illegal workers (¶¶ 16-17) and "are aware that numerous employees have used or are using identities different from those they

---

[6] Contrary to the Complaint's assertions, Chowel's plant and Dongwon's plant are relatively small, employing roughly a combined total of several hundred employees.

[7] Contrary to the Complaint's assertions, the evidence in this case will show that Ambassador does not supply workers to Chowel.

had previously used." (¶ 18).  And, because of this scheme, American workers are assigned less hours (¶ 23), do not receive raises (¶ 21), are "regularly" the first employees to be laid off (¶ 21), are deprived of their individual and/or collective bargaining power (¶ 24), and their wages have been depressed (¶ 22).

Looking beyond the so-called "Facts" section,  the Complaint's remaining sixty-nine paragraphs contain only two allegations (contained in the "Parties" section) relevant to Plaintiffs' claim for relief:

> 9.  …The president of Chowel instructed a Chowel employee tasked with interviewing job applicants that the employee should actively seek to hire illegal workers.  Chowel maintains stacks of fake identification papers in its HR office, so as to provide a veneer of legitimacy to its systematic employment of illegal workers.

C.    The Two Counts in the Complaint

Plaintiffs' two count Complaint alleges federal RICO claims for violations of immigration laws (Count I)[8] and unjust enrichment (Count II).  Plaintiffs' cause of action section merely recites the elements for each cause of action without providing any further factual detail. (Compl., ¶¶ 41-79).

---

[8] 8 U.S.C. § 1324(a)(3)(A), 8 U.S.C. § 1324(a)(1)(A)(iii), 8 U.S.C. § 1324(a)(1)(A)(iv), 18 U.S.C. § 1546(a) and 18 U.S.C. § 1546(b).

## III.   **ARGUMENT**

Plaintiffs' sole claim under RICO is that Defendants violated RICO 18 U.S.C. § 1962(c).[9] (Compl., ¶¶ 72-75).   A violation of § 1962(c) requires four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.[10]   In addition to establishing the four elements, plaintiffs must also show standing: (1) injury to business or property (2) by reason of the RICO violation.[11] Lastly, Plaintiffs allege Defendants were unjustly enriched by their unlawful hiring scheme and Plaintiffs show: (1) the defendant knowingly accepted and retained a benefit, (2) provided by another, (3) who has a reasonable expectation of compensation."[12]

For the reasons discussed below, Plaintiffs' Complaint fails to state a claim upon which relief can be granted.   Plaintiffs' conclusory allegations lack the factual detail required to plausibly give rise to an entitlement to relief under the

---

[9] Plaintiffs do not allege Defendants violated RICO 18 U.S.C. § 1962(d), a RICO conspiracy claim.   Plaintiffs (in one paragraph of their seventy-nine paragraph Complaint) use the word "conspire" to describe Defendants' behavior: Defendants' "conspire[d] to increase their profits by systematically violating federal law." (¶ 4).   RICO conspiracy requires a non-conclusory factual showing that the defendant agreed to the overall objective of or the predicate acts supporting a conspiracy. *Am. Dental Assoc. v. Cigna Corp.*, 605 F.3d 1283, 1293 (11th Cir. 2010).   Here, Plaintiffs have shown neither, and, thus, have failed to state a § 1962(d) RICO conspiracy claim.

[10] *Anza*, 547 U.S. at 457.

[11] *Williams v. Mohawk Indus.*, 465 F.3d 1277, 1283 (11th Cir. 2006).

[12] *Intersport, Inc. v. T-Town Tickets LLC*, 896 F. Supp. 2d 1106, 1114 (N.D. Ala. 2012) (*quoting Matador Holdings, Inc. v. HoPo Realty Invs., L.L.C.*, 77 So. 3d 139, 145 (Ala. 2011) (internal quotations omitted)).

*Iqbal/Twombly* pleading standard and the *Fed.R.Civ.P.* 9(b) fraud pleading standard.  Further, no facts are alleged in support of Plaintiffs' theory that the Defendants worked together to form an "enterprise" that violated federal immigration laws, or even that Defendants, collectively or separately, violated any immigration laws.  And even if there were such facts, Plaintiffs lack standing because there is no causal relationship between the alleged "enterprise's" behavior and the Plaintiffs' purported injury.  Ultimately, Plaintiffs' labels, conclusions and formulaic recitation of the elements do not entitle them to any relief.  Lastly, unjust enrichment is an equitable doctrine, and Plaintiffs' contract for work precludes an unjust enrichment claim.

    A.    <u>The Rule 12(b)(6) Standard</u>

        1.    <u>Rule 8</u>

Under *Iqbal*[13] and *Twombly*[14], a civil RICO plaintiff must comply with Rule 8, and the complaint must contain sufficient factual matter, accepted as true, to

---

[13] *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

[14] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

state a claim to relief that is plausible on its face.[15]   Pre-*Iqbal/Twombly* cases

considering the plausibility of a complaint have "little precedential value."[16]

If a complaint fails to comply with Rule 8, a 12(b)(6) motion to dismiss is

proper:

> [t]o survive a [12(b)(6)] motion to dismiss, a complaint must contain
> sufficient factual matter, accepted as true, to "state a claim to relief
> that is plausible on its face." A claim has facial plausibility when the
> plaintiff pleads factual content that allows the court to draw the
> reasonable inference that the defendant is liable for the misconduct
> alleged. The plausibility standard is not akin to a "probability
> requirement," but it asks for more than a sheer possibility that a
> defendant has acted unlawfully. Where a complaint pleads facts that
> are "merely consistent with" a defendant's liability, it "stops short of
> the line between possibility and plausibility of 'entitlement to
> relief.'"[17]

When considering a motion to dismiss, the court should disregard (1) legal

conclusions (2) bald assertions devoid of further factual enhancement and (3)

formulaic recitations of the elements of the claim.[18]   The court need only consider

"well-pleaded, nonconclusory factual allegations…to determine if they plausibly

suggest an entitlement to relief."[19]   But the court may also "infer from the factual

---

[15] FED.R.CIV.P. 8(a)(2); *Gachett v. Retail Wholesale Dep't Store Union,* No. 2:11-CV-398(MEF), 2013 U.S. Dist. LEXIS 45342, at *4-6 (M.D. Ala. Mar. 29, 2013).

[16] *Simpson v. Sanderson Farms, Inc.*, No. 7:12-CV-28(HL), 2012 U.S. Dist. LEXIS 130501, at *48-9 (M.D. Ga. Sept. 13, 2012); *Walters v. McMahen*, 795 F. Supp. 2d 350, 353-54, 357-58 (D. Md. 2011); *Nichols v. Mahoney*, 608 F. Supp. 2d 526, 538 (S.D.N.Y. 2009).

[17] *Gachett,* 2013 U.S. Dist. LEXIS 45342, at *5-7 (*quoting  Iqbal*, 129 S. Ct. at 1949-51).

[18] *Id*.

[19] *Id*.

allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer."[20]

### 2.  Rule 9(b)

A civil RICO claim based on predicate acts of *fraud* must not only comply with Rule 8, but also with the *Fed.R.Civ.P.* 9(b)'s heightened pleading standard.[21] To satisfy the Rule 9(b) standard, RICO complaints must show: (1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud.[22]

Plaintiffs' RICO claim is based on two predicate acts: violations of 8 U.S.C. § 1324[23] and of 18 U.S.C. § 1546.[24]  Because *both* alleged predicate act violations

---

[20] *Iqbal*, 129 S.Ct. at 1949.

[21] *Simpson*, 2012 U.S. Dist. LEXIS 130501, at *7-8 (*citing ADA v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010)).

[22] *Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1316-17 (11th Cir. 2007).

[23] Plaintiffs allege "Defendants knowingly accepted false immigration documents and knowingly used false documents to verify eligibility" in violation of 18 U.S.C. § 1546.  (¶¶ 57-59).

[24] Plaintiffs also allege Defendants knew they were hiring illegal workers because they accepted false documents (¶ 53), helped the illegal workers evade detection by using false documents (¶ 54), and encouraged entry of illegal workers by accepting false documents (¶ 55) in violation of 8 U.S.C. § 1324.

arise from purported fraudulent misrepresentations about immigration documents, the entire Complaint is analyzed under the 9(b) pleading requirements.[25]

This case is akin to *Cruz v. Cinram Int'l, Inc.*[26] which held that a complaint with both § 1324 and § 1546 claims is analyzed under the Rule 9(b) pleading requirements. In *Cruz* (as in this case)[27], claimants alleged § 1324 and § 1546 violations; the court held that the alleged violations of § 1546 involved fraud and should be analyzed under the Rule 9(b) pleading requirements.[28] The court also held that where a RICO suit has both fraud and non-fraud predicate acts -- the non-fraud claim must be pled under the heightened 9(b) standard if "*the same*

---

[25] *See infra* note 29.

[26] 574 F. Supp. 2d 1227 (N.D. Ala. 2008).

[27] The Plaintiffs' § 1546 allegations in this case (Complaint, ¶ 57-58) are substantially the same as the allegations in *Cruz*:

> Defendants' racketeering activity also includes open and ongoing violations of 18 U.S.C. § 546(a), including Cinram's acceptance of identification documents and other documents that authorize employment in the United States that Defendants knew or had reason to know were not lawfully issued for the bearer's use, were false and/or were obtained by false statements.

> Defendants have also violated and continues [sic] to violate 18 U.S.C. § 1546(b) by using identification documents that Defendant [sic] new [sic] or had reason to know were not lawfully issued to the bearer to falsely verify the eligibility of the persons presenting them to work at Cinram, and recording information from those documents on I-9 forms.

> Each violation of 18 U.S.C. § 1546 constitutes "racketeering activity" under the RICO Act.

> *Cruz*, 574 F.Supp. 2d at 1232.

[28] *See, e.g., Cruz*, 574 F. Supp. 2d at 1232; *Magnifico v. Villanueva*, 783 F. Supp. 2d 1217 (S.D. Fla. 2011)(§ 1546 is governed by Rule 9(b)); *Simpson v. Sanderson Farms, Inc.*, 7:12-CV-28(HL), 2012 U.S. Dist. LEXIS 130501, at *30-31 (M.D. Ga. Sept. 13, 2012)(§ 1546 claims are subject to Rule 9(b)).

*misrepresentation forms the basis of both the fraud and non-fraud claim.*"[29]   The

court analyzed the complaint in *Cruz* under the Rule 9(b) heightened pleading

standard because the § 1324 and § 1546 claims arose out of the same facts --

misuse of immigration documents.  Here, and like the *Cruz* claimants, the Plaintiffs

have to meet the heightened 9(b) fraud pleading standard for their § 1324 and §

1546 claims because both claims arise out of the fraudulent misuse of immigration

documents.

   **B.   The Complaint Fails to Allege Any Non-Conclusory Facts that
Support a Violation Under 18 U.S.C. § 1962(c)**

   A violation of 18 U.S.C. § 1962(c) requires:  (1) conduct (2) of an enterprise

(3) through a pattern (4) of racketeering activity. Each element is discussed below.

   1.   There are no facts showing Defendants "conducted or
        participated" in an enterprise

   At the core of a RICO civil claim is an agreement to "conduct or participate"

in civil RICO predicate acts.  Specifically, Section 1962(c) requires a showing that

***each***[30] defendant had "some part in directing the affairs of the enterprise."[31]   A

defendant involved in his "own affairs" or who passively acquiesced to an

---

[29] *Cruz*, 574 F. Supp. 2d at 1232 (*quoting Liquidation Comm'n of Banco Intercontinental, S.A. v. Renta*, 530 F.3d 1339 (11th Cir. 2008)).

[30] *See, e.g., Rose v Bartle*, 871 F.2d 331, 366 (3d Cir. 1989); *Black Radio Network, Inc. v. NYNEX Corp.*, 44 F. Supp. 2d 565, 581 (S.D.N.Y. 1999).

[31] *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993)("Conduct" requires "some degree of direction" and the word "participate" requires "some part in that direction."); *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1285 (11th Cir. 2006)("*Mohawk* 'must have some part in directing' the affairs of the enterprise.").

enterprise's course of conduct is not participating in an enterprise.[32]   Rather, evidence that the Defendant "operated, managed, or directed" the affairs of the enterprise "is required."[33]

Plaintiffs allege that the Defendants "schem[ed]" (¶¶ 1, 2) to employ and harbor illegal workers, that the "scheme is accomplished…[by] Defendants knowingly employing illegal workers and turning a blind-eye to the employment of illegal workers" (¶¶ 46-47), and that all the Defendants are "complicit and active in this scheme" (¶¶ 4, 20).

Plaintiffs' bald assertions that Defendants' engaged in a "scheme" (¶ 4), "complicit" behavior (¶ 20), etc., are conclusory, boilerplate allegations and, therefore, should be disregarded.[34] Once this boilerplate is disregarded, Plaintiffs' Complaint lacks any facts showing Defendants participated in directing the affairs

---

[32] *Reeves*, 507 U.S. at 179, 184-85; *Danny Lynn Elec. & Plumbing, LLC v. Veolia Es Solid Waste Southeast, Inc*., No. 2:09-CV-192-MHT(WO), 2011 U.S. Dist. LEXIS 78557, at *9 (M.D. Ala. July 19, 2011); *see also United States v. Goldin Indus*., 219 F.3d 1268, 1270-71 (11th Cir. 2000).

[33] *Boyle v. United States,* 556 U.S. 938, 953-54 (U.S. 2009).

[34] *Bell Atlantic Corp.*, 550 U.S. at 555(plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do); *Mamani v. Berzaín*, 654 F.3d 1148, 1153 (11th Cir. 2011)(citing to *Iqbal* and *Twombly* and stating that "statements of legal conclusions" are "not factual allegations" and are "entitled to no assumption of truth.").

of the enterprise.[35]   *Put simply, the Complaint is inadequate under Twombly and Iqbal and dismissal is proper.*

Moreover, there are not even any facts alleged generally which show that Defendants participated in directing the affairs of the "enterprise."   At most, Plaintiffs have pled Chowel and Dongwon knowingly hired illegal workers (¶ 16) and turned a "blind-eye" to Ambassador sending them illegal workers (¶ 23). These barebone allegations do not show RICO liability[36]; RICO liability "depends on showing that the Defendants conducted or participated in the conduct of the

---

[35] For example, Plaintiffs provide no facts explaining how each Defendant directs the course of the "enterprise," its role in the "enterprise," how the Defendants' conduct is in furtherance of the "enterprise's" goals (as opposed to Defendants' usual daily activities), or even what benefit the "enterprise" receives from the course of conduct.   Accordingly, Plaintiffs' allegations are insufficient to show that Defendants conducted or participated in a RICO enterprise. *See, e.g., Heise v. Porcelli,* No. 8:07-CV-1866-T-24MAP, 2008 U.S. Dist. LEXIS 50930, at *12 (M.D. Fla. June 13, 2008)("Plaintiffs assert only that the Defendants' acts constitute a pattern of racketeering activity and that the Defendants 'participated directly or indirectly in the conduct of the RICO enterprise's affairs through the collection of unlawful debt' (Amended Complaint PP 62-72), but do not provide specific facts in support or assert Defendants had 'some part in directing the affairs of the enterprise.'"); *Arch Ins. Co. v. Allegiant Prof'l Bus. Servs.*, No. CV 11-1675 CAS (PJWx), 2012 U.S. Dist. LEXIS 56605, at *10-11 (C.D. Cal. Apr. 23, 2012); *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 865 F.Supp.2d 1002, 1035 (C.D. Cal. 2011); *Drobny v. JP Morgan Chase Bank,* No. 12-CV-5392, 2013 U.S. Dist. LEXIS 32051, at *29 (N.D. Ill. Mar. 8, 2013).

[36] *Danny Lynn Elec. & Plumbing, LLC,* 2011 U.S. Dist. LEXIS at *7-9 (the court dismissed the matter on 12(b)(6) motion because defendants were engaged in their "normal business" trying to "maximiz[e] profits" and there was no "no allegation that the members of the first enterprise were doing anything but conducting their normal affairs, rather than the specific affairs of the enterprise."); *see also Zavala v. Wal-Mart Stores Inc.*, 691 F.3d 527, 544 (3d Cir. 2012); *Dysart v. BankTrust*, No. CV-11-RRA-1917-S, 2012 U.S. Dist. LEXIS at *40-42 (N.D. Ala. Apr. 12, 2012); *Amsterdam Tobacco, Inc. v. Philip Morris, Inc.*, 107 F. Supp. 2d 210 (S.D.N.Y. 2000).

14

enterprise's affairs, not just their own affairs."[37]   Businesses "customarily act for their own gain or benefit in commercial relationships" (and not for the benefit of the enterprise) and RICO claimants must plead facts "dispel[ling] this notion."[38] Here, no such facts are pled, and dismissal is proper.

2.   <u>The Complaint fails to allege the Defendants formed an Enterprise</u>

Plaintiffs have not identified a viable RICO enterprise, a linchpin of any RICO claim. To sufficiently allege an "enterprise," Plaintiffs must provide facts showing Defendants formed "an ongoing organization, formal or informal" that "functioned as a continuing unit" in furtherance of committing predicate acts.[39] Importantly, the enterprise is not the pattern of racketeering activity; it is an "entity" separate and apart from the pattern of activity in which it engages.[40]

Plaintiffs' deficient Complaint asserts (1) each Defendant is an "enterprise" and (2) (without using the phrase "association-in-fact") apparently that together the Defendants form an enterprise by association-in-fact. (¶¶ 44, 45).  Both assertions

---

[37] *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001)(quoting *Reves v. Ernst & Young*, 507 U.S. at 185) (internal quotation omitted).

[38] *Dysart*, 2012 U.S. Dist. LEXIS at *40-42.

[39] *United States v. Turkette*, 452 U.S. 576, 583 (U.S. 1981); *United States v. Goldin Indus., Inc.*, 219 F.3d 1271, 1275 (11th Cir. 2000); *see also* 18 U.S.C. § 1961(4).

[40] *Turkette*, 452 U.S. at 583 ("While the proof used to establish these separate elements may in particular cases coalesce, proof of one does not necessarily establish the other. The 'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages. The existence of an enterprise at all times remains a separate element which must be proved."); *Boyle*, 129 S. Ct. at 2245.

15

fail, and, regardless, Plaintiffs fail to identify an enterprise distinct from the alleged pattern of racketeering activity.

      a.    <u>Each Defendant cannot constitute an enterprise and no facts show an association-in-fact enterprise</u>

First, and as a matter of law, a single defendant cannot constitute an enterprise. Plaintiffs' pleading to the contrary, that a single defendant can form an enterprise, has been expressly rejected by the Eleventh Circuit, and every other circuit, and must fail.[41]

Second, no facts support Plaintiffs' "association-in-fact" theory. An association-in-fact enterprise has three structural features: (1) a common purpose; (2) a relationship among those associated with the enterprise; and (3) longevity sufficient to achieve purpose. A group of defendants share a "common purpose" as an association-in-fact enterprise when they  "engag[e] in a course of conduct" together.[42] They are sufficiently "related" for purposes of an association-in-fact enterprise when they "function as a continuing unit"[43] with a structure, and have some mechanism for controlling and directing the affairs of the enterprise.[44]

---

[41] *Goldin Indus.*, 219 F.3d at 1270-71 ("We now agree with our sister circuits that, for the purposes of 18 U.S.C. § 1962(c), the indictment must name a RICO person distinct from the RICO enterprise. The plain language of the statute requires that the entities be distinct.").

[42] *Boyle*, 556 U.S. at 946.

[43] *Mohawk Indus., Inc.*, 465 F.3d at 1283-84.

[44] *Dysart*, 2012 U.S. Dist. LEXIS at *40-42 (citation omitted).

Here, there is no common purpose or a sufficient relationship among the Defendants.   Plaintiffs allege, in cursory fashion, that Ambassador provides workers to the Plant Operators and that all the Defendants knowingly (turning a "blind-eye") hired illegal workers. (Compl., ¶¶ 11, 16, 17, 23).  *Such conclusory allegations clearly do not establish an "association-in-fact" enterprise under Iqbal and Twombly.*[45] Courts all over the country have routinely dismiss RICO suits containing similar allegations.[46]  This Court should too.

---

[45] For example, the Complaint lacks any facts explaining the enterprise's structure or how it functions as a continuing unit. It provides no detail about each Defendants' role, how it directs the enterprise, or even what the common purpose of the enterprise is.  In fact, the Complaint does not even assert, in a conclusory fashion or otherwise, any relationship between Chowel and Dongwon.

And, given the current rate of unemployment in this country, there is no plausibility to Plaintiffs' conclusory speculation that two automobile parts suppliers with different ownership and management would come together to from a criminal enterprise to run illegal workers across the border in an elaborate scheme to depress wages, versus simply hiring "legal" workers who are now, unfortunately, available in abundance.

[46] *See, e.g., Drobny v. JP Morgan Chase Bank,* No. 12-CV-5392, 2013 U.S. Dist. LEXIS 32051, at *29 (N.D. Ill. 2013)("Plaintiffs' complaint does not describe the organizational structure or hierarchy of the alleged RICO enterprise. Nor does it describe what role each of the six Defendants played in the purported enterprise. For each Defendant, the complaint must plead that the defendant had some part in directing or conducting the alleged 'enterprise' such that it participated in the operation or management of the enterprise itself."); *In re Wellpoint Out-Of-Network "UCR" Rates Litig.*, 865 F.Supp.2d 1002, 1035 (C.D. Cal. 2011); *Schmidt v. Fleet Bank*, 16 F.Supp.2d 340, 346-47 (S.D.N.Y. 1998); *Danielson v. DBM, Inc.*, No. 1:05-CV-2091-WSD, 2006 U.S. Dist. LEXIS 52746, at *7-8 (N.D. Ga. 2006).

b.     Plaintiffs have not alleged an enterprise distinct from the alleged pattern of racketeering

RICO association-in-fact enterprises require an "ascertainable structure beyond that inherent in the pattern of racketeering activity in which it engages."[47] "The 'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages."[48]  Pleading the requisite number of racketeering acts by participants in the enterprise does not establish the existence of an enterprise separate and distinct from the racketeering acts.[49]

Here, Plaintiffs allege that *Defendants' pattern of racketeering activity* created an enterprise. (Compl., ¶¶ 16-17). That is, the enterprise exists solely as a result of Defendants' alleged violation of immigration laws.  These allegations are insufficient to establish RICO liability.

*Dysart v. BankTrust*[50] is illustrative. In *Dysart*, the plaintiffs alleged that the bank defendants "operated together for the common purpose of conspiring to divest Dysart of her home."[51]  The court found there was no enterprise because, *inter alia*, the plaintiffs did not allege "the 'enterprise' existed for any reason other than to

---

[47] *Boyle,* 556 U.S. at 945-46.

[48] *Id.* at 954.

[49] *Turkette*, 452 U.S. at 583.

[50] No. CV-11-RRA-1917-S, 2012 U.S. Dist. LEXIS 92460, at *9 (N.D. Ala. Apr. 12, 2012).

[51] *Dysart*, 2012 U.S. Dist. LEXIS at *9.

take Dysart's home."[52]   "[S]imply conspiring to commit a fraud is not enough to trigger the Act if the parties are not organized in a fashion that would enable them to function as racketeering organization for other purposes."[53]

Plaintiffs have not sufficiently alleged an enterprise separate and distinct from the purported racketeering activity and their claim must fail.[54]

### 3.   The Complaint fails to show the enterprise engaged in a pattern of racketeering

A pattern of racketeering activity requires at least two distinct, but related "predicate acts."[55]   Predicate acts are defined by statute, and violating the Immigration and Nationality Act, Section 274 (which includes violations of 8 U.S.C. § 1324) for the purpose of financial gain is a statutorily defined predicate act sufficient to create civil RICO liability.[56]   Similarly, violating 18 U.S.C. § 1546

---

[52] *Id.* at *40-42.

[53] *Id.* (*quoting VanDenBroeck v. CommonPoint Mortgage Co.*, 210 F.3d 696, 699 (6th Cir. 2000)).

[54] *See Danielson v. DBM, Inc.*, No. 1:05-CV-2091-WSD, 2006 U.S. Dist. LEXIS 52746, at *7-8 (N.D. Ga. July 31, 2006)("Plaintiffs do not allege facts showing an enterprise existed "separate and apart from the pattern of activity in which it engages." The allegations of the Complaint show only a business relationship between a supplier and retailer. Plaintiffs' thin allegations simply reciting language from the RICO statute are not sufficient to allege the existence of an enterprise and thus are insufficient to plead a RICO violation."); *Thiss v. A.O. Smith Corp.*, No. 1:91-CV-239, 1993 U.S. Dist. LEXIS 11846, at *27-28 (W.D. Mich. June 29, 1993).

[55] *Williams*, 465 F.3d at 1283 ("An act of racketeering is commonly referred to as a 'predicate act.").

[56] *Id.* ("According to 18 U.S.C. § 1961(1)(F), racketeering activity means any act which is indictable under the Immigration and Nationality Act, Section 274 . . . if the act indictable under such section of such Act was committed for the purpose of financial gain.")(internal quotations omitted).

is a predicate act sufficient to create civil RICO liability.[57]   However, no facts support Plaintiffs' theory that the Defendants violated § 1546 and § 1324 separately, let alone collectively, as part of an enterprise.

a.    Plaintiffs Fail To Allege Sufficient Facts To Demonstrate That Any Defendants Knew Individuals Were Brought Into The United States Illegally For The Purposes Of Illegal Employment.

The Complaint bases its alleged violations of 18 U.S.C. § 1962(c) in part on predicate act violations of 8 U.S.C. § 1324(a)(3)(A).   Section 1324(a)(3)(A) "makes it a federal crime for any person to 'knowingly hire[ ] for employment at least 10 individuals with actual knowledge that the individuals are [illegal] aliens' during a 12-month period."[58]   The term "alien" refers to (1) "an unauthorized alien," who (2) "has been brought into the United States in violation of [§ 1324(a)]."[59]

The second element, "knowledge that the alien was brought into the country illegally" is essential.[60]   Plaintiffs do not assert, let alone provide a factual basis supporting, that Defendants knew workers were brought into the country illegally. (see ¶¶ 17, 18).   Plaintiffs' conclusory allegation that Defendants "knowingly"

---

[57] *Williams*, 1165 F.3d at 1293.

[58] *Edwards v. Prime Inc.*, 602 F.3d 1276, 1292 (11th Cir. 2010).

[59] *Id*. at 1292.

[60] *Id*. at 1293-94 (claimants' RICO claim failed where they did not allege that defendant employer knew the aliens who were hired had been illegally brought into the United States).

hired illegal workers does not show that Defendants knew the workers had been illegally <u>brought</u> into the United States; "[a]n employer may know that it hired illegal aliens without knowing how they made their way into the United States."[61] Because no facts alleged show that Defendants knew "illegal" workers had been <u>brought</u> into the country unlawfully by a third party, the Complaint does not allege a plausible case against the Defendants.

       b.   <u>Plaintiffs Fail To Allege Sufficient Facts To Demonstrate That Any Defendants "concealed" or "harbored" Illegal Workers</u>

The Complaint also alleges predicate act violations of 8 U.S.C. § Section 1324(a)(1)(A)(iii). Section 1324(a)(1)(A)(iii) makes it a crime for any person who: "knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shield from detection, such alien . . . ." [62] "Harbor" means to offer shelter or refuge, or "to prevent authorities from discovering that the employee is unauthorized or illegally remaining in the country."[63]

---

[61] *Edwards*, 602 F.3d at 1294; *Hall*, 753 F. Supp. 2d at 1156-57; *Nichols,* 608 F.Supp. at 534.

[62] 8 U.S.C. § 1324(a)(1)(A)(iii); *Edwards,* 602 F.3d at 1297.

[63] *Hall,* 753 F.Supp.2d at 1158.

Plaintiffs allege, in conclusory fashion, that Defendants knowingly accepted false documents and that Chowel maintained fake identification papers to provide a "veneer of legitimacy." (Compl., ¶¶ 9, 18).  Such conclusory allegations, lacking any factual plausibility, should be disregarded.[64]

Regardless, Plaintiffs' allegations that Defendants hired unauthorized workers, even in reckless disregard of that status, is insufficient to show a violation of § 1324(a)(1)(A)(iii).[65]  Likewise, the allegation against Chowel does not show the company harbored or concealed illegal workers (and *clearly* does not show Chowel did it for the benefit of the "enterprise"[66]); an employer "harbors" or "conceals" a worker if it, for example, actually provides free housing, transportation, or social security cards.[67]  Plaintiffs have alleged none of these things.[68]  For the above reasons, the Complaint does not allege a plausible case against Defendants.

---

[64] *Ashcroft*, 556 U.S. at 678 (when considering a motion to dismiss, the Court should "eliminate any allegations in the complaint that are merely legal conclusions"); *Gachett*, 2013 U.S. Dist. LEXIS 45342, at *5-7; *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)

[65] *Hall*, 753 F.Supp.2d at 1158-61 (granting summary judgment in favor of the defendant was because there was no proof that defendants "harbored" the illegal workers -- there was no evidence the employer provided free housing and transportation to the illegal immigrants); *Edwards*, 602 F.3d at 1299.

[66] *See Reeves,* 507 U.S. at 185.

[67] *Hall*, 753 F.Supp.2d at 1158-61; *Edwards*, 602 F.3d at 1299.

[68] Plaintiffs will most likely argue their cursory allegations are sufficient based on *Edwards*, where the claimants sufficiently pled a § 1324(a)(1)(A)(iii) claim because they alleged

c.   No facts Suggest Defendants "encouraged" Illegal Entry
Under 8 U.S.C. 1324(a)(1)(A)(iv)

Plaintiffs also allege a predicate act violation of 8 U.S.C.

§ Section 1324(a)(1)(A)(iv).     A   § 1324(a)(1)(A)(iv) violation requires:

(1) encouraging or inducing; (2) an alien; (3) to come to, enter, or reside in the

United States; and (4) knowing or in reckless disregard that the alien's coming to,

entering, or residing in the United States is illegal.[69]   The Eleventh Circuit has

interpreted the phrase "encouraging or inducing" to include the act of "helping"

aliens **come to, enter, or remain** in the United States.[70] Plaintiffs have not

sufficiently pled the first element, that the Defendants "encouraged or induced"

illegal aliens to come to this country.

Plaintiffs' cursory allegations, without any factual enhancement, that

Defendants "knowingly or recklessly" hired illegal workers, repeatedly hired the

same undocumented aliens under different names, and accepted false documents

(¶ 18) are conclusory and should be disregarded.[71]

---

the employer supplied the aliens with jobs and with social security numbers to facilitate their
employment.  602 F.3d at 1295.  But Plaintiffs are wrong.  First, in contrast to the Plaintiffs'
barebone allegations, the claimants in *Edwards* provided non-conclusory facts in support of their
position.  Second, Plaintiffs do not allege, as the claimants in *Edwards* did, that Defendants
specifically provided social security numbers and for this reason as well *Edwards* is
distinguishable.

[69] *United States v. Lopez*, 590 F.3d 1238, 1250 (11th Cir. 2009).

[70] *Edwards*, 602 F.3d at 1295 (emphasis added).

[71] *Mamani*, 654 F.3d at 1153 (citing to *Iqbal* and *Twombly* and stating that "statements of
legal conclusions" are "not factual allegations" and are "entitled to no assumption of truth.").

23

Regardless, they do not show Defendants provided "help" to illegal workers -- such as providing false names and social security numbers.[72] Rather, and at best, they suggest Defendants turned a "blind-eye" to the presence of illegal workers and their use of illegal documents. Turning a "blind-eye" does not create liability under § 1324(a)(1)(A)(iv).[73] For the above reasons, the Complaint does not allege a plausible case against Defendants.

> d. Plaintiffs Fail to Allege Sufficient Facts that Defendants Violated 18 U.S.C. § 1546(a) and (b)

In conclusory fashion, Plaintiffs allege Defendants committed predicate act violations of 18 U.S.C. § 1546(a) and (b) by fraudulently accepting false documents from illegal workers. (¶¶ 17, 18, 57, 58). In addition, Plaintiffs allege Chowel maintained fake identification papers in its HR office. (¶ 9).

Like the rest of Plaintiffs' Complaint, the allegations lack sufficient, or any, particularized detail to establish plausibility as required by *Iqbal* and *Twombly*.[74] No facts show how fraudulent documents were presented, when they were presented, where they were presented, who accepted them, and how the Defendants obtained knowledge the documents were fraudulent. Further, the allegation that Defendant Chowel kept "stacks of fake identification papers" in its

---

[72] *Edwards*, 602 F.3d at 1295.

[73] *See, e.g.*, *Zavala*, 691 F.3d at 542 (even if, as pled, Wal-Mart knowingly used illegal aliens that does not show Wal-Mart "encouraged" their entry in violation of § 1324(a)(1)(A)(iv)).

[74] *See supra* note 71 and accompanying text.

HR office is insufficient to show it <u>concealed the known employment of illegal workers</u>.[75]   Without any underlying facts supporting their conclusory allegations, dismissal is proper.

    C.   <u>Plaintiffs lack standing because the Complaint fails to sufficiently allege Defendants' conduct caused injury to Plaintiffs' business or property</u>

While a "mere violation" of 18 U.S.C. § 1962(c) establishes criminal liability, a plaintiff may only recover in an action for civil conspiracy upon establishing standing -- that the injury is caused "by reason of" a tortious act.[76] The "by reason of" requirement implicates two concepts: (1) a sufficiently direct injury so that a plaintiff has standing to sue; and (2) proximate cause.[77] Courts require "some direct relation" between the injury alleged and the injurious conduct[78] and "carefully scrutinize" proximate causation at the pleading stage.[79]

Plaintiffs summarily assert that Defendants' illegal hiring scheme proximately *caused* American workers to be assigned less hours (¶ 23), to not receive raises (¶ 21), to "regularly" be the first employees to be laid off (¶ 21), to

---

[75] *Cruz*, 574 F. Supp. 2d at 1233; *Walters*, 795 F. Supp. 2d at 357 (complaints that lack "any specific examples of known illegal employees," such as, identifying "workers whose papers were found to be facially fraudulent or workers hired for multiple shifts using dual identities" are deficient).

[76]   *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)(the standing requirement is derived from Article III of the Constitution, which provides that federal courts may only hear "cases or controversies.").

[77] *Williams,* 465 F.3d at 1287.

[78] *Id*.

[79] *Id*.

be deprived of their individual and/or collective bargaining power (¶ 24), and that, generally, their wages have been depressed (¶ 22). Plaintiffs' conclusory allegations[80] of proximate cause are insufficient as a matter of law.[81]

Moreover, even assuming the Complaint has the required nonconclusory specificity, a myriad of factors (to put it mildly) would affect hours, overtime, raises, lay-offs and wages, and Plaintiffs have pled no facts or data that would allow the Court to conclude a direct causal relationship between the alleged predicate acts and Plaintiffs' purported damages.[82]

For example, in just the last year alone two courts have dismissed RICO claims because Plaintiffs' failed to provide any supporting data of proximate cause.

---

[80] Ultimately, Plaintiffs' entire liability theory can be summarized as "I received less [hours, overtime, work opportunities, etc.] because illegal aliens have been hired." That is, the mere presence of illegal workers caused all their damages. Such conclusory cause and effect theories do not meet Plaintiffs' burden under *Iqbal* and *Twombly*.

[81] *See, e.g., Terrorist Attacks on September 11, 2001 v. Al Rajhi Bank (In re Terrorist Attacks on September 11, 2001)*, 714 F.3d 118, 124 (2d Cir. 2013)(conclusory allegations of causal relationship do not meet "Twombly's plausibility standard"); *Jackson v. Ocwen Loan Servicing, LLC*, No. 11-60560--Civ-COOKE/TURNOFF, 2012 U.S. Dist. LEXIS 33935, at *7-8 (S.D. Fla. Mar. 14, 2012)(same).

[82] The number of independent and intervening causes in the causal chain between the alleged predicate acts and the alleged damages is overwhelming - factors affecting hours and overtime, for example, include performance, seniority, work history, product demand, supply issues, macroeconomic factors, changing business environment (e.g., increased health care costs), facility maintenance issues, acts of God (e.g., weather), the availability of other "legal" workers to perform the same work, etc. The plethora of intervening factors precludes any presumption that the mere presence of any illegal workers caused Plaintiffs any harm, such as, for example, to miss overtime opportunities, and Plaintiffs provide no data or facts to support their position.

26

In *Simpson v. Sanderson Farms, Inc.*[83] and *Walters v. McMahen*[84] the courts dismissed claimants' RICO claims, which alleged claimants' wages were depressed because employers used illegal workers, because the claimants failed to provide any supporting underlying data suggesting causation.  Like the above cases, Plaintiffs provided no data supporting causation -- such as, the market wage of area employers who do not employ illegal workers, what lower wage rates illegal workers received, at what wage rates Ambassador provided legal and illegal workers, how the Plaintiffs can purport to determine which area employers do and do not "employ illegal workers" for purposes of calculating market wages -- and no data about any of the working conditions at the Plant Operators.  Put simply, they have provided no facts (let alone data) necessary to show that their causal theory is plausible.

Lastly, Plaintiffs' entire causal theory rests on faulty logic.  Plaintiffs seemingly contend that by simply removing the illegal workers from the workforce, the current workers would have received more work opportunities, would not have been terminated, etc.  To the contrary, if *alleged* illegal workers were removed from the Plant Operators' work site as Plaintiffs suggest, it is likely that such would not have resulted in Plaintiffs receiving more work but in the Plant

---

[83] No. 7:12-CV-28(HL), 2013 U.S. Dist. LEXIS 15064 (M.D. Ga. Feb. 5, 2013).

[84] 684 F.3d 435 (4th Cir. 2012).

Operators *hiring "legal" replacement workers*.  Any suggestion that the Plant Operators would have let their plants run understaffed is improper speculation, unsupported by any facts or data, and should be disregarded.

        D.     Plaintiffs' Unjust Enrichment claim must fail as a matter of law

"[T]o prevail on a claim of unjust enrichment under Alabama law, a plaintiff must show that: (1) the defendant knowingly accepted and retained a benefit, (2) provided by another, (3) who has a reasonable expectation of compensation."[85] Plaintiffs allege Defendants' illegal conduct permitted Defendants "to reap substantial wage savings" because Defendants are able to pay Plaintiffs lower wages than they would otherwise be forced to pay. (¶¶ 76-79).

First, as discussed above, Plaintiffs' bald assertion that their wages were depressed because of the presence of illegal workers is conclusory, carries no weight and should be disregarded.[86]

Second, regardless, in *Williams v. Mohawk Indus.*[87], the Eleventh Circuit addressed the exact argument Plaintiffs now make. The court stated "Plaintiffs

---

[85] *Intersport, Inc. v. T-Town Tickets LLC*, 896 F. Supp. 2d 1106, 1114 (N.D. Ala. 2012) (*quoting Matador Holdings, Inc. v. HoPo Realty Invs., L.L.C.*, 77 So. 3d 139, 145 (Ala. 2011) (internal quotations omitted)).

[86] *See supra* note 81 and accompanying text.

[87] 465 F.3d at 1294-95.

were paid an agreed upon wage" and "therefore there can be no unjust enrichment."[88]

Just like *Williams* from above, when Plaintiffs agreed upon a fixed wage with Defendants, a legal contract was created as a matter of fact and there can be no unjust enrichment.[89]

## IV.   **CONCLUSION**

For the reasons set forth above, the Court should dismiss Plaintiffs' Complaint in its entirety.

s/Mark M. Lawson
Marcel L. Debruge (DEB006)
Email:  mdebruge@burr.com
Frank McRight (MCR002)
Email:  fmcright@burr.com
Mark M. Lawson (LAW013)
Email:  mlawson@burr.com
Matthew T. Scully (SCU005)
Email:  mscully@burr.com
Ingu Hwang (HWA001)
Email:  ihwang@burr.com

---

[88] *Williams*, 465 F.3d at 1294-95 (citations omitted).

[89] Under Alabama law, a verbal or written promise to pay wages creates an express contract, and the presence of an express contract precludes an unjust enrichment claim. *Costine v. BAC Home Loans*, No. 2:12-cv-3722-LSC, 2013 U.S. Dist. LEXIS 71647, at *11-12 (N.D. Ala. May 21, 2013)("In Vardaman v. Bd. of Educ., 544 So. 2d 962, 965 (Ala. 1989), the Alabama Supreme Court stated: 'it has long been recognized in Alabama that the existence of an express contract generally excludes an implied agreement relative to the same subject matter.'"); *Wynn v. Davison Design & Dev., Inc.*, CA 09-0790-CG-C, 2010 U.S. Dist. LEXIS 21413, at *25 (S.D. Ala. Feb. 19, 2010).

29

*Attorneys for Defendants*
*Chowel Weldparts, Inc. and Dongwon*
*Autopart Technology, Alabama LLC*

**OF COUNSEL:**
BURR & FORMAN LLP
420 North 20th Street, Suite 3400
Birmingham, Alabama  35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have served a copy of the foregoing document by Notice of Electronic Filing on:

Glen M. Connor
Quinn, Connor, Weaver, Davies &
Rouco LLP
Suite 380E, 2700 Highway 280
Birmingham, AL 35223

Patrick L. Hays, Jr.
The Hays Law Firm, LLC
415 E. Commerce Street, Ste 201
Greenville, AL 36037

Peter J. Mougey
James L. Kauffman
Levin Papantonio Thomas Mitchell
Rafferty & Proctor, P.S.
316 South Baylen Street, Suite 600
Pensacola, FL 32502-5996

Charles A. Stewart III
Bradley Arant Boult Cummings LLP
The Alabama Center for Commerce
401 Adams Avenue, Suite 780
Montgomery, AL 36104

Jeremiah Frei-Pearson
Todd S. Graber
Meiselman, Packman, Nealon,
Scialabba & Baker, P.C.
1311 Mamaroneck Avenue
White Plains, NY 10605

C. Jason Wilcox
Moore, Clarke, DuVall & Rodgers, P.C.
2829 Old Dawson Road (31707)
P. O. Drawer 71727
Albany, GA 31708-1727

This 5th day of July, 2013.

_s/Mark M. Lawson_
Mark M. Lawson

31